UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN SENSAT,

                Plaintiff,                        Case Number 17-12468

v.                                                         Honorable David M. Lawson

SOUTHWEST AIRLINES CO.,

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Darren Sensat injured his left foot and ankle while boarding a Southwest Airlines flight departing from the Dominican Republic destined for the United States. He says that his foot became lodged in a gap between the tread and riser of the airstairs that the airline used for passenger boarding at that airport. Sensat brought suit under Article 17 of the Montreal Convention, which renders air carriers liable to passengers injured by accidents that occur on board the aircraft or during embarking or disembarking. Defendant Southwest Airlines has moved for summary judgment contending that the undisputed facts show that Sensat's injuries did not result from an "accident." Because the record demonstrates otherwise, the motion will be denied.

I.

The injury occurred on April 9, 2017. Sensat was a passenger on Southwest Flight 1239 from Punta Cana in the Dominican Republic, returning to the United States after a family vacation. He arrived at the airport with his family about two hours before their scheduled departure on a clear sunny day. Sensat checked his bags and carried on a small backpack with personal items that weighed 10 to 12 pounds. He was wearing shorts and athletic running shoes. When the boarding

time was called for their flight, passengers went outside the terminal and waited for a bus that drove them across the tarmac to where the plane was parked.

After the passengers got off the bus, they went up a set of airstairs to board the plane. Sensat followed his wife and daughters up the stairs as he ascended. There were around 15 passengers in the line ahead of them. Sensat attested that he had used similar airstairs to board planes during at least 10 flights in the past, and he did not notice anything that seemed different or unusual about the stairs on this occasion.

Sensat walked up along the left side as he ascended the stairs. He was looking straight ahead at his wife as he walked, when his foot became trapped. When asked to describe his fall, Sensat stated: "I was walking straight up following my wife and all of a sudden my [left] foot went in and got caught[,] and I didn't know what it was it got caught on[,] and my body went forward and I fell." Sensat stated that his entire foot, "from front to back," with the shoe still on, went into a "gap" in the airstairs structure. The loss of footing caused Sensat to fall forward, toward his wife, and a passenger immediately behind Sensat reached out to help him. As he fell forward, his foot was "lodged" in the gap, which caused his ankle to rotate.

Sensat was helped up the stairs onto the plane, but he was "hopping and cursing." He asked for some ice for his ankle, which by then was "swelling real fast." EMTs subsequently were called to attend to him. After examining Sensat's foot for several minutes, the EMTs said that they needed to summon a doctor, which was done. The doctor said that the ankle did not appear to be broken, but asked Sensat if he wanted to go to the hospital for further examination. Sensat declined and said he would rather go to the hospital when he arrived back in the United States. As a result of the fall, Sensat suffered serious injuries to his foot and ankle, including torn ligaments and tendons, which required treatment by surgery and a cast.

Before the flight departed, Sensat asked the flight attendant to use his cellphone to take some pictures of the gap in the air stairs where he had fallen. The photos were presented at Sensat's deposition, where he identified them as depicting the gap in the air stairs where his foot was caught.

Southwest's flight attendant Kimberly Wilburn wrote a report of the incident, which she also described at a deposition. She stated that Sensat was injured at the top of the airstairs when he "stepped through an opening between two metal slats." Although Sensat complained about a "hole" in the stairs, Wilburn said that she could not find one. With the help of the captain, though, they "discovered a horizontal space between two metal slats." Beneath one of the steps was a placard that read "Watch Your Step." Boarding continued, but she said that the captain stood on the platform and cautioned the remaining passengers "to step over the opening."

Wilburn also confirmed that Sensat asked her to take some photos of the stairs with his cellphone. She obliged and returned the phone to him. However, when shown the two photos at her deposition, she testified that she did not recognize them

Southwest's Regional Manager for the Caribbean Region, Aaron Varnell, testified that Southwest contracted with a company named Aviam to provide ground services at the Dominican Republic airport, such as baggage handling and management of equipment and vehicles used to service Southwest's aircraft on the ground. He said that there are between five and seven different types of airstairs used at the facility for boarding passengers. An Aviam ground crew member would have been responsible for configuring and positioning the airstairs for the plaintiff's flight, but Varnell stated that Aviam had not produced any incident report relating to the accident, so there was no way to identify the driver, operator, or supervisor involved with the boarding operation. Varnell also conceded that he had not inquired, and he believed there was no way to know, which of the various types of airstairs were used for the plaintiff's flight.

Varnell was asked to examine the two photographs offered by the plaintiff showing a gap in the airstairs tread, and Varnell stated that he could not tell if the pictured gap was a normal condition for the airstairs. He also conceded that he had never observed any "properly configured" airstairs with a gap in a tread. Varnell testified that the airstairs could normally have a gap in the "riser" (vertical) portion of the stair steps, which he contrasted with the "tread" or horizontal component.

The plaintiff's single-count complaint against Southwest Airlines premises liability on Article 17 of the Montreal Convention. That treaty subjects air carriers to pay damages to passengers suffering injury caused by an "accident" that occurs, among other times, during aircraft boarding.

II.

Southwest Airlines moved for summary judgment under Federal Rule of Civil Procedure 56(a). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To oppose that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[T]he party opposing the summary judgment motion must do more than simply

show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted)). The opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The submitted materials need not themselves be in a form that is admissible in evidence. *Celotex*, 477 U.S. at 324.

"The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

The parties agree that, because Sensat was injured on an international flight, his claim is governed by the Montreal Convention, which provides his exclusive avenue of recovery. *Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 411 (6th Cir. 2017). The relevant section states:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention art. 17(1).

"The Montreal Convention imposes strict liability for injuries that are compensable under Article 17(1), up to 100,000 SDRs [Special Drawing Rights, or about $1.39 per SDR presently in U.S. dollars] per passenger, with a decennial adjustment for inflation." *Etihad Airways*, 870 F.3d at 422-23. "Above that strict-liability limit, a carrier remains liable for all damage sustained, with no limit, unless the carrier can prove either that 'such damage was not due to the negligence or

other wrongful act or omission of the carrier or its servants or agents,' or that 'such damage was solely due to the negligence or other wrongful act or omission of a third party.'" *Ibid.* (quoting Montreal Convention art. 21). "[A]n exoneration provision [also] allows a reduction in compensation for injuries caused by or contributed to by the plaintiff, in the same manner as a pure-comparative-negligence or pure-comparative-fault scheme; this exoneration provision applies to all claimed damages including those falling under the strict-liability limit." *Ibid.* (citing Montreal Convention art. 20).

The parties agree that defendant Southwest was an "air carrier," the flight on which the plaintiff traveled was within the scope of the Montreal Convention, and that the Convention supplies the plaintiff's sole avenue of recovery for the alleged injury. They do not dispute that the plaintiff suffered a "bodily injury," or that the injury occurred during the plaintiff's embarkation on the flight. Thus, the only question of fact that they dispute, other than the extent of the plaintiff's damages, is whether the event was an "accident" as that term is used in Article 17(1). The defendant contends that the circumstances here do not fit within the definition that courts have ascribed to that term.

The term "accident" is not expressly defined in Article 17 or elsewhere in the Convention. There are cases that addressed a definition of that term as it was used in the Warsaw Convention, a predecessor treaty. Interpretations of similar terms in the Warsaw Convention do not automatically apply to the Montreal Convention, particularly "[i]n light of the great difference between the purpose of the Warsaw Convention and the purpose of the Montreal Convention." *Etihad Airways*, 870 F.3d at 423 (finding that "the Montreal Convention replaced a restrictive, pro-airline industry regime [the Warsaw Convention] with a treaty that favors passengers rather than airlines") (quotation marks and citations omitted). However, the Sixth Circuit is satisfied that

-6-

the cases defining "accident" under the Warsaw Convention apply with equal force to the definition of that term as it is used in the Montreal Convention. *Id.* at 426.

In *Air France v. Saks*, 470 U.S. 392 (1985), the plaintiff suffered deafness as a result of cabin depressurization during the normal operation of the aircraft. The Court denied recovery, holding that the injury was not the result of an "accident." The Court held that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. The Court instructed that the "definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Ibid.* But Saks could not recover under that definition because her "injury indisputably result[ed] from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Id.* at 406. Therefore, it was not caused by a "accident" as the Warsaw Convention used that term.

The defendant contends that Sensat ought to suffer the same fate because his injury was caused by his own internal reaction to a "normal" condition of the airstairs during the boarding process. Southwest Airlines apparently maintains that the gap in the airstairs steps was not "unusual," and the plaintiff's injuries were caused by his own "misstep," which the defendant casts as the plaintiff's "own internal reaction to the usual, normal, and expected operation of the airstairs," not caused by anything "external" to him.

As an initial matter, the defendant argues that the Court should disregard the two photographs depicting a horizontal gap in the airstairs tread that the plaintiff submitted, because they cannot be authenticated sufficiently to be admitted into evidence at trial. The evidence a party submits in opposition to a summary judgment motion "need not [itself] be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex,*

477 U.S. at 324). But the party must show "that [the evidence] *will be* admissible at trial" to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. *Ibid.*

Sensat enlisted an expert to authenticate the photographs, but the Court disqualified him because he did not submit a timely report under Federal Rule of Civil Procedure 26(a)(2)(B). *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ."). However, even without the aid of his expert, the plaintiff plainly has produced sufficient information to authenticate the photographs and to support a finding that they are what he claims them to be. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Sensat was asked to identify the photos at his deposition, and he stated in certain terms that they were taken from his phone and that they depicted the gap in the air stairs that caught his foot and caused him to fall:

> Q. Mr. Sensat, let me show you what we've marked Exhibits 1 and 2, a couple photographs, and ask if you have ever seen those before?
>
> A. Yes.
>
> Q. And what does Exhibits 1 and 2 show?
>
> A. A gap in the stairway.
>
> Q. Okay. So Exhibits 1 and 2, do those appear to be a photograph of the airstairs that you fell on on April 9, 2017?
>
> A. Correct.

Darren Sensat dep. at 88, ECF No. 34-2, PageID.663.

Sensat conceded that he did not take the photographs himself, but Southwest flight attendant Kimberly Wilburn attested that he asked her to take photos of the stairs with his phone,

and she did so. She stated that she did not recognize and did not take the two photographs that were produced by the plaintiff. But the Sixth Circuit has affirmed the admissibility of photographs where they depict distinctive persons, places, or items that are recognized by the subscribing witness, regardless of whether other uncertainties may be raised regarding the exact circumstances of the production or who took the photos. *United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018); *see also United States v. Cox*, 871 F.3d 479, 487-88 (6th Cir. 2017). The positive identification of the airstairs in the photograph by the plaintiff is sufficient here to clear the "lower hurdle of authentication" and allow the photos into evidence, at least for the purpose of depicting the spot where the plaintiff says his foot was caught on the stairs.

The photographs together with the other evidence offered by the plaintiff satisfy his obligation to show that a fact question exists on the question whether his injury was caused by an "accident." Southwest argues that the plaintiff cannot point to any specific event that was out of the ordinary, except for his own misstep. But that gloss on the facts "neglects the reality that there are often multiple interrelated factual events that combine to cause any given injury." *Olympic Airways v. Husain*, 540 U.S. 644, 653 (2004). It is incorrect to assume that "only one event could constitute an 'accident.'" *Id.* at 652. Rather, an "injury is the product of a chain of causes." *Ibid.* (quoting *Saks*, 470 U.S. at 406). To prove an "accident," therefore, "a plaintiff need only be able to prove that "'some link in the chain was an unusual or unexpected event external to the passenger.'" *Id.* at 652 (quoting *Saks*, 470 U.S. at 406).

The confluence of events that led to the plaintiff's injury began, no doubt, with the configuration of the particular model of airstairs to fit the aircraft type chosen for Flight 1239. Southwest Airlines's contractor apparently expanded the telescoping airstairs so that a substantial gap opened between the tread and the riser. Sensat ascended the stairs in a line with several other

Southwest passengers as instructed, unable to see the gap, and apparently unaware of the hazard. His foot became lodged in the gap and he stumbled, damaging hit foot and ankle tissue.

The gap in the airstairs certainly was "external" to the plaintiff, and the defendant has not seriously contested the plaintiff's account that it was the entrapment of his foot in that space that was the cause of the fall that produced his serious ankle injury. The defendant's position that the fall was caused by the plaintiff's mere "internal reaction" to a perfectly routine circumstance of air travel is not borne out by either the record or the case law. On similar facts, applying the construction announced in *Saks*, the federal courts readily have concluded that such incidents as water on boarding stairs and an improperly lowered overhead monitor screen were "external" circumstances that led to passengers' physical mishaps. *Gezzi v. British Airways*, 991 F.2d 603, 605 (9th Cir. 1993) ("[T]he presence of water on the stairs qualifies as an 'accident' because it was both 'unexpected or unusual' and 'external to' Gezzi."); *Phifer v. Icelandair*, 652 F.3d 1222, 1223 (9th Cir. 2011) (holding that plaintiff's injury was due to an "accident" where "[a]fter entering her assigned row on Icelandair Flight No. 656, Appellant Elin Phifer bent over, placed two carry-on bags under the seat in front of hers, stood up, and struck her head on an overhead television monitor, which was extended in the down position").

The defendant's speculation that the plaintiff may have been injured due to crab walking or traipsing up the stairs "on his tip-toes" is mere wishful thinking on its part, unsupported by any evidence in the record. Neither the plaintiff nor anyone else testified that any such antics figured in his ascent of the airstairs.

Moreover, as the Sixth Circuit explained at length in *Doe v. Etihad Airways*, where a physical mishap occurs that simultaneously directly injures the plaintiff, while she is on board or in the process of boarding or disembarking an aircraft, there is no need to determine exactly what

act of miscalculation by the defendant led to the injury, as long as there is a contemporaneous physical connection between the unexpected incident and the harm. *Etihad Airways*, 870 F.3d at 425 n.14 ("Nothing in the Montreal Convention or in the Warsaw Convention caselaw requires us to separate the accident from the bodily injury in cases like this one where there is no temporal gap between the accident and the bodily injury."). Here, the plaintiff has identified the stair tread gap as one unexpected circumstance that directly provoked his fall; his injury occurred contemporaneously with the fall.

Relying on a number of non-controlling cases, the defendant attempts to engraft onto the *Saks* standard an implied requirement that the plaintiff must demonstrate some deviation from "industry standards" or the defendant's own documented "policies and procedures" before he can establish that an "unusual" or "unexpected" event occurred. But here a jury readily could conclude that the encounter with a stair tread gap wide enough to entrap a grown man's entire foot was "unexpected" by both the plaintiff and the airline's own personnel under the circumstances. And the federal courts have resisted defendants' attempts to import into the "flexible" rule of *Saks* any implied requirement that a *per se* violation of some standard, policy, or regulation must be shown for a plaintiff to prevail. *See Phifer v. Icelandair*, 652 F.3d 1222, 1224 (9th Cir. 2011) ("Although FAA requirements may be relevant to the district court's 'accident' analysis, they are not dispositive of it. We have never held that violation of FAA requirements is a prerequisite to suit under Article 17 [and] [t]he Supreme Court has suggested that a *per se* rule requiring a regulatory violation would be improper.") (collecting cases); *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 163-64 (2d Cir. 2003) ("[T]he trial court's attempt to graft weather-reporting criteria for pilots onto the definition to create a new rule of *law* is misplaced," because "the Supreme Court in *Saks*, by defining 'accident' and urging that it be applied flexibly, 'did not thereby authorize courts to

add *more* hurdles for a plaintiff to overcome.'" (quoting *Wallace v. Korean Air*, 214 F.3d 293, 300 (2d Cir. 2000) (Pooler, J., concurring))).

Several of the cases on which the defendant relies are distinguishable because they fall readily into one of two categories: (1) where the plaintiff's injury was the result of a peculiar internal medical condition that was aggravated by some normal incident of air travel, such as routine changes in cabin air pressure; or (2) where the plaintiff's principal complaint was that airline personnel reacted to the plaintiff's medical distress with insufficient or ineffective attempts to provide aid, despite their adherence to the operative policies and procedures concerning responses to in-flight medical complaints.

Examples of the first category include *Air France v. Saks*, discussed above. *See also Twardowski v. American Airlines*, 535 F.3d 952 (9th Cir. 2008) ("[D]eveloping [Deep Vein Thrombosis] in-flight is not an 'accident.'"); *but see Olympic Airways v. Husain*, 540 U.S. 644 (holding that the refusal of a flight attendant to reseat an asthmatic passenger away from the smoking section, resulting in the passenger's death from an asthma attack, constituted an "accident" under the Warsaw Convention).

The second category includes cases such as *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 531 (5th Cir. 2012) ("[I]t is uncontested that the crew took action to assist Wilson during the final minutes of the flight. Abdallah and other crew members moved Wilson to the floor, gave her oxygen, and alerted the captain, who arranged for medical assistance for Wilson once the plane arrived. Carriker does not deny that these actions occurred. Rather, he faults the flight crew for failing to do more."); and *Fulop v. Malev Hungarian Airlines*, 244 F. Supp. 2d 217, 223 (S.D.N.Y. 2003) ("[T]he Court's own observation of Fulop and his demonstration of the manner in which he asked for the Flight to be diverted illustrates to the Court that a reasonable person, hearing this

request, would not necessarily have interpreted it as indicating that a dire emergency demanding such an extraordinary response was involved.").

In a handful of other cases, the courts concluded that the injury was not caused by any circumstance that was "unusual," despite the fact that injury to the plaintiff resulted. However, the benign circumstances alluded to in those cases, such as an escalator that had been turned off for unidentified reasons, or a plastic wrapper bag from a passenger blanket lying on the floor under a seat mid-flight, simply were not out of the ordinary. *See Nguyen v. Korean Air Lines Co.*, 807 F.3d 133 (5th Cir. 2015) (finding no accident where the airline failed to communicate adequately the availability of a wheelchair for a needy passenger); *Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1366 (S.D. Fla. 2008) (noting that "there is simply no evidence whatsoever that an inoperable escalator is an 'unusual or unexpected event' sufficient to constitute an 'accident.'"); *Rafailov v. El Al Israel Airlines, Ltd.*, No. 06-13318, 2008 WL 2047610, at *3 (S.D.N.Y. May 13, 2008) ("The event that caused the injury here — plaintiff slipping on a plastic blanket bag on the floor under a seat during flight — does not constitute an accident under Article 17 of the Montreal Convention.").

In this case, by contrast, the gap in an airstairs tread reasonably could be found to be "unusual" and "unexpected" to a passenger who was not warned of its presence and had no reason to anticipate or spot the hazard. The reactions of the defendant's flight crew — consulting ground personnel to try to find something to "cover" the gap; the flight captain remaining on the stairs to caution other boarding passengers to step over the gap — suggest that they thought the situation was unusual enough to warrant taking exceptional steps to prevent a similar fall by other passengers. Moreover, the defendant's own expert, Aaron Varnell, admitted that he could not tell if the pictured gap was a normal condition for the airstairs, and he conceded that he never had seen

any "properly configured" airstairs with a gap in the tread like that depicted in the plaintiff's photos. Those admissions bolster the inference that the gap observed in this instance was unusual and unexpected.

A jury easily could reach that conclusion.

III.

The plaintiff has offered evidence in this record from which a jury could conclude reasonably that his ankle and foot injuries were caused by a accident during the boarding process of Southwest Airlines Flight 1239.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 27) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date: March 4, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 4, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---